UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-4 FARD MALLORY,

        Defendant.

_____/

Case No. 2:17-cr-20053-4

HONORABLE STEPHEN J. MURPHY, III

FILE UNDER SEAL

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [125]

The Government charged Defendant Fard Mallory with conspiracy to distribute cocaine and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841, respectively. Mallory has moved to suppress evidence seized during a May 11, 2017 search of his residence. For the reasons stated below, the Court will deny the motion.

## BACKGROUND

Over the course of nearly three years, federal agents monitored the activities of a suspected drug trafficking organization (DTO) headed by Darryl and Jerome Terrell. On May 11, 2017, federal agents entered and searched a residence at 5685 Stahelin Avenue, Detroit, Michigan ("Target Home"). The officers relied upon a search warrant. ECF 135-1. The search-warrant affidavit made the following factual allegations:

- The affiant had served as a Special Agent for the Drug Enforcement Administration for five years. *Id.* ¶ 1.
- The affiant knew drug dealers kept records related to their operations "in locations where the narcotic dealers exercise direct control and dominion, such as their residences" or residences of their friends or relatives. *Id.* ¶ 12.

- On eight different occasions between December 2015 and June 2016, security at the Hollywood Casino in Toledo, Ohio observed Mallory meet briefly with a man later identified as co-defendant Kaylor Brown. *Id.* at ¶¶ 35, 39.
- During these interactions, Mallory drove a 2012 Ford Fusion with a Michigan registration of DHQ4324, which is registered to Latrice Chanel Bivens-Chatman at the Target Home. And, Mallory listed the address of the Target Home on his driver's license. *Id.*
- During an interaction on June 9, 2016, casino security observed Brown exchange a white bag with Mallory for a brown bag. *Id.* ¶ 37.
- Later that day, Ohio-based DEA agents pulled Brown over and a subsequent search revealed that the brown bag contained three kilograms of cocaine. *Id.* ¶ 38.
- The affiant attests that the cocaine seized from Brown was similarly packaged to cocaine seized from co-defendant Cheryl Cheatham, a suspected drug courier in the Terrell's DTO. *Id.* ¶¶ 46–48.
- Darryl Terrell had contacted Mallory by phone. *Id.* ¶ 54.
- Pursuant to a search warrant, DEA agents observed Mallory's phone at the Target Home on at least one occasion; and that the affiant observed Mallory exit the Target Home and enter a vehicle belonging to Nancy Karyn Gilmore—identified as Mallory's paramour. *Id.* ¶¶ 56–58.

ECF 135-1, PgID 681–716.

The Government charged Mallory with conspiracy and possession with intent to distribute controlled substances and Mallory then filed the motion to suppress.

## LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures[.]" To secure the right, the Amendment provides that "no Warrants shall issue, but upon probable cause[.]" "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quotations omitted). To establish probable cause, a warrant must be "supported by Oath or affirmation." U.S. Const. amend. IV. Thus a search-warrant affidavit "must contain adequate supporting facts about the underlying

2

circumstances to show that probable cause exists[.]" *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

When issuing a warrant, the "magistrate is simply to make a practical, common-sense decision" given the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit must provide a magistrate "with a substantial basis for determining the existence of probable cause" and courts afford that determination great deference. *Id.* at 236, 238–39. A magistrate's probable cause determination "should be reversed only if arbitrarily made." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

## DISCUSSION

Defendant avers that the Government "intends to introduce at trial firearms, controlled substances, ammunition[,] and other evidence obtained" from the premises on May 11, 2017. ECF 125, PgID 591. The Government responds that "[n]o controlled substances were seized" from the premises and that it "does not intend to introduce at trial the firearm or ammunition" seized from another individual during the search. ECF 134. PgID 664. Thus, Defendant's motion to suppress applies to the "other evidence" seized from the premises upon which the Government may rely at trial.

I.    The Search Warrant

Mallory argues that the search warrant was defective on its face because the warrant: (a) did not state with "reasonable particularity a nexus between the place searched and the evidence of criminal activity," and (b) relied upon stale evidence. ECF 125, PgID 596–600.

A. Particularity

The warrant failed the particularity requirement. To justify a search, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (citation omitted). Establishment of a nexus is a "fact-intensive question" examined in light of "the totality of circumstances presented[.]" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). Courts may draw "the inference that evidence of drug trafficking would be found at [a] residence of one who is engaged in ongoing drug trafficking." *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009). The Sixth Circuit has never held that a suspect's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Brown*, 828 F.3d at 383. An affidavit must offer "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, . . . facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id.*

In *Brown*, the Sixth Circuit found that an affidavit failed to "include facts that directly connect[ed] the residence with the suspected drug dealing activity" despite the affidavit's contention that the suspected drug dealer's car was registered to the residence and tested positive for narcotics during a canine search while parked on the street. *Id.* at 384. The Sixth Circuit readily admitted that the evidence "supported the search of [the defendant's] car," but not his residence. *Id.* at 383.

The Government's reliance upon *Gunter* to distinguish *Brown* from the current case is unpersuasive. *See* ECF 134, PgID 671. In *Gunter,* the magistrate judge relied upon an informant's identification of the defendant as a drug dealer, recognized the same

4

informant's reliability in other cases, and received evidence that law enforcement corroborated the information through surveillance.

Moreover, the affidavit contained evidence that the defendant had "engaged in repeated purchases of cocaine in the one to four kilogram range." *Gunter*, 551 F.3d at 481. The Sixth Circuit found that the quantity and repeated nature of the transactions allowed for the conclusion that the defendant "was engaged in ongoing drug trafficking" and thus a reasonable inference would be that "evidence of illegal activity would be found" at defendant's residence. *Id.*

Here, Mallory is distinguishable in several meaningful ways. First, the defendant in *Gunter* purchased the drugs; Mallory allegedly sold the drugs. The distinction is relevant because a purchaser of drugs will transport them to a safe place like a residence. A seller, however, would not return to the residence with drugs. *See, e.g., Peffer v. Stephens*, 880 F.3d 256, 273 (6th Cir. 2018) ("[W]hen drugs are used in the commission of a distribution offense, the distributed drugs are no longer in the possession of the suspected distributor. The affidavit therefore must establish some other reason to believe that drugs or other evidence of crime would be found in the suspect's residence if searched.") It may be said that a seller of drugs might store the drugs at his residence prior to sale, but, in Mallory's case, the Government contends that he picked up the packages from non-residential locations. The affidavit lacks evidence that Mallory stored drugs or drug-trafficking-related materials at the Target Home.

Second, the Government's observations of Mallory's alleged drug transactions with Brown at Hollywood Casino are insufficient to support probable cause. In only one instance—when Brown was pulled over and his car was searched—does the Government

have evidence that Brown left his interaction with Mallory with cocaine. The Court may reasonably infer, however, that Brown exchanged his white bag for Mallory's brown bag, which did contain cocaine. But, even if *Gunter* were squarely on point, the Court would have to infer that all of Mallory's interactions with Brown resulted in exchanges of cocaine, infer that the quantity was sufficient to conclude that Mallory was engaged in ongoing drug trafficking, and *then* infer that evidence of that illegality would be found at the Target Home. That line of inferences insufficiently supports probable cause. Moreover, unlike in *Gunter*, the Government lacked any corroboration from a reliable, confidential source that Mallory was drug dealer.

Third, the connection of Mallory's phone, car, and driver's license to the Target Home—even if the phone, car, and license were used in drug trafficking—are insufficient evidence to infer that Mallory was dealing from the Target Home. Even if Mallory was known to engage in ongoing drug trafficking, the Government must present "some reliable evidence connecting the known drug dealer's ongoing criminal activity to [his] residence[.]" *Brown*, 828 F.3d 383. The evidence connecting Mallory's activities to his residence insufficiently demonstrated that "incriminating evidence would be found *there*, rather than in some other place." *Carpenter*, 360 at 594 (emphasis in original). As in *Brown*, the affidavit lacked any evidence that Mallory "distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there." 828 F.3d at 382. Additionally, the search warrant for Mallory's residence lacked any suggestion "that a reliable confidential informant had purchased drugs there, that the police had ever conducted surveillance at [defendant's] home," or that telephone conversations linked the residence to drug trafficking. *Id.*

Finally, the Government admits that "there was no indication that the drug transactions occurred or originated from Mallory's residence[.]" ECF 134, PgID 671. The Government relies primarily upon Mallory's alleged status as a drug dealer to justify the search of his home. *Id.* Under *Brown*, that showing is not sufficient to support a warrant.

Based on the evidence set forth in the affidavit, the magistrate judge lacked a substantial basis for concluding that probable cause existed and that there was "a fair probability that contraband or evidence of a crime [would] be found in a particular place." *Ilinois v. Gates*, 462 U.S. 213, 239 (1983). The search warrant failed to describe particularly the nexus between the Target Home and the evidence sought.

B. Stale Evidence

Because the search warrant was defective for lack of a particular nexus between Mallory's residence and his alleged drug trafficking activities, the Court need not address the staleness argument.

II.     Good-Faith Exception

An exception to the exclusionary rule exists if an officer acts in "objective good faith" on a warrant. *United States v. Leon*, 468 U.S. 897, 920 (1984). Evidence should be suppressed when "the benefits of police deterrence outweigh the heavy costs of excluding 'inherently trustworthy tangible evidence' from the jury's consideration." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 907). "[A] warrant issued by a magistrate normally suffices to establish" that an officer "acted in good faith in conducting the search." *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982).  Good faith exists when an officer acts "in objectively reasonable reliance on a subsequently invalidated search warrant[.]" *Leon*, 468 U.S. at 922. The threshold to find that an officer

failed to act in good faith "is a high one[.]" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). To find that an officer failed to act in good faith, a court must determine that an affidavit so lacked "indicia of probable cause as to render official belief" that probable cause existed "entirely unreasonable." *Leon*, 468 U.S. at 923. An affidavit so lacks indicia of probable cause if it is a "bare bones affidavit" containing only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *White*, 874 F.3d at 496 (internal quotations omitted). So long as the affidavit "contains a minimally sufficient nexus between the illegal activity and the place to be searched," the affidavit is not "bare bones." *Id.* at 496–97 (citing *Carpenter*, 360 F.3d at 596). The affidavit need have only "some modicum of evidence, however slight" between "the criminal activity at issue and the place to be searched" for "official reliance on it [to be] reasonable." *Id.* at 497 (quoting *United States v. Laughton*, 409 F.3d 748, 749–50 (6th Cir. 2005)).

Mallory contends that the "facts described in the warrant identify *no nexus* between the alleged drug deals and Mr. Mallory's residence, nor is there any evidence" to support an inferential leap by the magistrate judge. ECF 125, PgID 601 (emphasis added). The assertion belies the clear language of the affidavit that connected Mallory's phone, car, and driver's license to the residence. Those facts, however slight, are sufficient to provide "*some* connection, regardless of how remote" it may be, between the criminal activity and Mallory's residence. *White*, 874 F.3d at 497. In particular, the car that casino security observed Mallory driving during his meetings with Brown was registered to the address of the Target Home. Because Mallory drove the car to his repeated meetings with Brown, the car—and thus the address to which it was registered—sufficiently, albeit remotely,

8

connected the residence to the criminal activity. *Cf. Brown*, 828 F.3d at 385–86 (declining to apply the good-faith exception because the only fact connecting the residence to drug activity was "a passing reference to [defendant's] car registration"). The officers, therefore, acted in good faith in executing the warrant because, although the affidavit fell short of the probable-cause standard, it contains "a minimally sufficient nexus between the illegal activity and the place to be searched." *Id.* at 385 (quotation omitted).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to suppress evidence [125] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 10, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 10, 2018, by electronic and/or ordinary mail.

s/ David Parker
Case Manager